**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT TOLEDO**

| | |
|---|---|
| **CHRISTOPHER MASALES** and **PATRICIA MASALES**, 22923 US Highway 20A, Archbold Ohio 43502 | CASE NO. |
| Plaintiffs, vs. | **COMPLAINT FOR DAMAGES (WITH JURY DEMAND)** |
| **OCWEN LOAN SERVICING, LLC,** % Corporation Service Company 50 W. Broad Street, Suite 1330 Columbus, OH 43215 | |
| And | |
| **TRANSUNION LLC,** % The Prentice-Hall Corporation System, Inc. 50 West Broad Street Suite 1330 Columbus, OH 43215 | |
| Defendant(s) | |

## COMPLAINT

Plaintiffs Christopher Masales and Patricia Masales ("Plaintiffs"), through counsel, and for their complaint against Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Trans Union LLC ("TransUnion") (collectively "Defendants"), hereby state as follows:

### INTRODUCTION

1.    The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote

1

efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.  The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2.      The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.  Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3.      Plaintiffs bring this action to challenge the actions of Defendants Ocwen and TransUnion with regard to erroneously reporting derogatory credit information.  Defendant Ocwen, based on the allegations below, repeatedly breached their contract with Plaintiffs which triggered the erroneously reported derogatory credit information.

4.      Defendants failed to properly investigate Plaintiffs' disputes which directly caused damage to Plaintiffs' creditworthiness which in turn has directly impacted the interest rates of credit obtained by the Plaintiffs since the Defendants failed to investigate.

5.      Defendants failed "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" as statutorily mandated pursuant to 15 U.S.C. § 1681e(b).

6.     Defendants failed to comply with its duties under 15 U.S.C. § 1681i(a)(1), which requires that credit reporting agencies "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information."

## PARTIES, JURISDICTION, AND VENUE

7.     Plaintiffs Christopher Masales ("Chris") and Patricia Masales ("Patti") ("Plaintiffs" or "Masales") are each natural persons residing in the City of Archibold, County of Fulton, State of Ohio.  Plaintiffs are each a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

8.     Defendant Ocwen Loan Servicing LLC is a wholly owned and operated subsidiary of Ocwen Financial Corporation and is a limited liability company incorporated under the laws of the State of Delaware.  Ocwen is registered to do business with the Ohio Secretary of State and maintains its principal place of business at 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409.

9.     Defendant TransUnion regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.  TransUnion is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business in Ohio.

10.     Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

11.     This Court has federal question jurisdiction because this case arises out of violation of federal law.  15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331.

3

12. This Court has supplemental jurisdiction to hear all state law statutory and common law claims pursuant to 28 U.S.C. § 1367.

13. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred, or a substantial part of property that is the subject of the action, is in this District.

## FACTUAL BACKGROUND

14. During 2017 the Plaintiffs and Defendant Ocwen were opposing parties in *Christopher Masales, et al. v. Ocwen Loan Servicing, LLC, et al.*, Case No. 3:17-cv-1670 in the United States District Court for the Northern District of Ohio (the "Action").

15. The Action involved in part Plaintiffs' claims against Ocwen for various alleged servicing violations related to the Loan on Plaintiffs' property (the "Loan").

16. In November 2017 the Plaintiffs and Defendant Ocwen reached a confidential settlement agreement to resolve the action.  The agreement became effective as of December 6, 2017 when the final signature on the settlement agreement was signed.

17. While the full terms of the settlement agreement are confidential, the agreement did include in it Paragraph 4 in which Ocwen agreed within 30 days of the effective date of the agreement to submit Universal Data Forms to the Credit Reporting Agencies ("CRA's") which reflected in part that Plaintiffs' Loan was paid as agreed from September 2013 to November 2017 ("Credit Reporting Agreement").

18. As the effective date of the settlement agreement was December 6, 2017, Ocwen had until January 5, 2018 to submit the Universal Data Form ("UDF") to the CRAs.  A copy of the Universal Data Form Ocwen, upon belief, sent the CRA's dated December 6, 2017 is attached as Exhibit A to this Complaint.

4

19. In very early February 2018 the Plaintiffs checked their credit monitoring service, Credit Karma, and noticed that the reporting by Ocwen on Plaintiffs' TransUnion reports was showing a delinquency for the periods of time in the settlement agreement. A copy of Plaintiff Patricia Masales' February 4, 2018 TransUnion Report from Credit Karma is attached as Exhibit B.

20. When reviewing Exhibit B Plaintiffs were troubled to see the following information being reflected for Ocwen:

Account Details

Last Reported: Nov 01, 2017

Creditor Name: OCWEN LOAN

Account Type: Conventional Real Estate Mortgage

Account Status: Closed - Derogatory

Opened Date: May 31, 2007

Closed Date: Nov 01, 2017

Limit --

Term: 360 Months

Monthly Payment: $801

Responsibility: Joint

Balance: $0

Highest Balance: $92,000

Payment Status: 120-149 Days Late

Worst Payment Status: 120-149 Days Late

Date of Last Payment: Sep 09, 2015

Amount Past Due: $0

Times 30/60/90 Days Late: 0/0/0

Remarks: Settled - less than full balance

*See Exhibit B* at p. 3.

5

21.     Shortly after reviewing Exhibit B, Ocwen provided Plaintiffs and Plaintiffs' Counsel with Exhibit A, which reflected that Ocwen had purportedly sent the UDF form to TransUnion as of December 6, 2017.

22.     On or about February 10, 2017 the Plaintiffs then sent written correspondence to TransUnion pursuant to 15 USC § 1681i(a)(2), in which Plaintiffs disputed the reported information regarding its reporting obligation by notifying TransUnion, in writing, of the incorrect and inaccurate credit information in light of Exhibit A.  A copy of one of the Plaintiffs' correspondence along with the tracking information is attached as Exhibit C.

23.     Exhibit C was a letter, sent certified return receipt requested, to TransUnion that requested the information referenced in Paragraph 20 which Plaintiffs disputed as inaccurate and incorrect derogatory information be removed, corrected or deleted.  *See Exhibit C* at p. 1.

24.     Upon receiving Exhibit C, TransUnion was required to conduct an investigation into this specific account on Plaintiff Patricia Masales' credit report pursuant to 15 U.S.C. § 1681i.

25.     Upon receiving Exhibit C, TransUnion was also required to notify Ocwen, as a furnisher, of the disputed reporting information alleged in Paragraph 20 based on TransUnion's mandated statutory duty pursuant to 15 U.S.C. § 1681i.

26.     On or about February 26, 2017 Plaintiff Patricia Masales received from TransUnion through its "reinvestigation" that TransUnion received notice of Plaintiffs' dispute pursuant to 15 U.S.C. § 1681i(a)(6) and that TransUnion revised Plaintiff's Credit Report where applicable.  A copy of the February 26, 2017 correspondence is attached as Exhibit D.

27.     Plaintiffs were upset upon reviewing Exhibit D because TransUnion had "corrected" the reporting in the following manner:

- Changed the payment status from April 2015 through November 2017 to "unknown"; *See Exhibit D* at p. 4.

- Kept the pay status as "Account 120 days past due date."  *Id.*

28.    The reporting reflected in Exhibit D was inconsistent with the terms referenced in Exhibit A.

29.    On March 3, 2018, shortly after receiving Exhibit D, Plaintiffs pulled Plaintiff Christopher Masales' TransUnion credit report, a copy of which is attached as Exhibit E.  When reviewing Exhibit E against the changes made in Exhibit D, Plaintiffs were upset to see that TransUnion was properly reporting the Ocwen Loan on Exhibit E based on the information provided in Exhibits A and C, while Plaintiff Patricia Masales' report was being reported inconsistently with Exhibit A.

30.    On April 9, 2018 Plaintiffs purchased the "3 Bureau Credit Report and Scores" and "Personal Credit Report" for Plaintiff Patricia Masales from TransUnion which cost a total of $41.45.

31.    Plaintiffs made these purchases as Plaintiffs continued to be concerned as to both Plaintiffs' credit scores in light of Exhibits D and E.

32.    Plaintiffs were disappointed to see the April 9, 2018 TransUnion Credit Report for Plaintiff Patricia Masales which is attached as Exhibit F to the Complaint still contained the exact same negative information referenced in Exhibit D.  *See Exhibit F* at p. 1

33.    On May 18, 2018 Plaintiffs went to Vision Chrysler Jeep Dodge Ram in Defiance, Ohio to purchase a vehicle.  Based on Exhibit E the Plaintiffs reasonably believed they would get a reasonable interest rate on financing.  During the course of applying for credit on

that day through the dealership the Plaintiffs were provided a copy of their credit scores which is attached as Exhibit G to the Complaint.

34.     When Plaintiffs reviewed their credit score, they were angry Plaintiff Patricia Masales' score, despite Exhibit A's terms as to Ocwen's reporting, was 638.  *See Exhibit G* at p. 1.  Plaintiffs knew that the 638 Score was a direct result of TransUnion's failure to correct the reporting or Ocwen's continued reporting inconsistent with Exhibit A as demonstrated by Exhibits C, D, and F.

35.     As Plaintiffs had an emergent need for a vehicle, Plaintiffs went ahead and signed the installment sales contract for the 2015 Jeep Cherokee which included an interest rate of 10.39%.  A copy of the installment sales contract is attached as Exhibit H.

36.     Since the vehicle purchase the Plaintiffs have continued to monitor their credit. On July 12, 2018 Plaintiffs ordered a credit report from TransUnion for Plaintiff Patricia Masales a copy of which is attached as Exhibit I.  Plaintiffs were disappointed to see that Ocwen has continued to report the same delinquency as noted on Exhibit F.  *See Exhibit I* at p. 2.

### COUNT ONE: AGAINST OCWEN AND TRANSUNION
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681, *et seq.*

37.     Plaintiffs restate all allegations contained in Paragraphs 1 through 36 as if fully restated herein.

38.     As stated above, Plaintiffs discovered in February 2018 that Ocwen was inaccurately reporting the payment history on the Loan as the reporting was inconsistent with the terms of the settlement agreement and the Universal Data Form purportedly sent by Ocwen to all three credit bureaus on or about December 6, 2017.

39.     Specifically, TransUnion inaccurately reported in February 2018 on both Plaintiffs' Credit Reports that the Ocwen Loan was 120-149 days delinquent and the worst payment history was 120-149 days delinquent when the settlement agreement and UDF form expressly indicated Ocwen would report all payments as current.

40.     This inaccurate reporting was materially misleading because it created misperceptions about the delinquency of the Loan in contradiction to the settlement agreement.

41.     On or about February 10, 2018 Plaintiffs disputed the reported information regarding its reported obligation by notifying TransUnion, in writing, of the incorrect credit information. *See Exhibit C.*

42.     Exhibit C expressly requested TransUnion correct the information. *Id.*

43.     TransUnion printed and mailed its notice to Plaintiffs of the results of its investigation on February 26, 2018. *See Exhibit D.*

44.     Based on Exhibit D, TransUnion failed to correct Plaintiff Patricia Masales' Credit File to revise and update the reporting for the Ocwen tradeline; the reinvestigation report was patently incorrect and materially misleading.

45.     Based on Exhibits D, E, and F, TransUnion further failed to notify Ocwen regarding Plaintiff Patricia Masales' dispute thus violating 15 U.S.C. § 1681(a)(2); TransUnion failed to do so because it did not believe it was necessary, despite Exhibit B.

46.     In the alternative, upon information and belief based on Exhibit F, TransUnion, pursuant to its duties under 15 U.S.C. § 1681i(a)(2), notified Ocwen of each Plaintiff's dispute.

47.     Based on Exhibit F, a reasonable investigation by either or both TransUnion and Ocwen would have corrected Plaintiff Patricia Masales' credit report to match that of Plaintiff Christopher Masales' report.

9

48.     Based on Exhibits E, G, and H, TransUnion and/or Ocwen failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(b) and/or 1681i(a) respectively.

49.     TransUnion and Ocwen's continued incomplete and inaccurate reporting of Plaintiff Patricia Masales' credit history as demonstrated by Exhibit I, in light of its knowledge of the actual errors and omissions was willful.  Plaintiff Patricia Masales is, accordingly, eligible for statutory and punitive damages.

50.     Based on Exhibits G, H and I, as a result of TransUnion's continued misleading and inaccurate reporting, Plaintiffs have suffered actual damages, including without limitation increased costs of credit for the purchase of the 2015 Jeep Cherokee at an interest rate of 10.39% when the Plaintiffs should have qualified for at least 7.60%, fear of continued credit denials, loss of enjoyment, and out-of-pocket expenses in challenging TransUnion's wrongful omissions as well as the $52.95 for continued credit score monitoring, and damage to both Plaintiffs' creditworthiness.

51.     The foregoing acts and omissions constitute willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

52.     As a result of each and every willful violation of the FCRA, Plaintiffs are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1) of at least $52.95 as well as the amortized difference in the financing of the 2015 Jeep Cherokee at the 10.39% interest versus the 7.60% interest the Plaintiffs could have been eligible for had the Defendants properly reported; statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as

the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

53.     As a result of each and every negligent noncompliance of the FCRA, Plaintiffs are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1) of at least $41.45 as well as the amortized difference in the financing of the 2015 Jeep Cherokee at the 10.39% interest versus the 7.60% interest the Plaintiffs could have been eligible for had the Defendants properly reported; and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

## COUNT TWO: DEFENDANT OCWEN
### BREACH OF CONTRACT

54.     Plaintiffs reincorporate all of the allegations contained in Paragraphs 1 through 36 as if fully restated herein.

55.     Plaintiffs and Ocwen have a binding contractual relationship based upon the settlement agreement between the parties.

56.     Pursuant to Paragraph 4 of the settlement agreement, Ocwen was to send to each of the credit reporting agencies the Universal Data Form that reflected suppressed payments for September 2013 through October 2017 for each Plaintiffs' credit reports.  *See Exhibit A*.

57.     Based on Exhibits B through F, Ocwen either sent the form to TransUnion for both Plaintiffs, or alternatively only sent it for Plaintiff Christopher Masales, as his credit reporting was corrected following the submission of the UDF by Ocwen.

58.     Based on Exhibits C through F, Ocwen had the opportunity to review a direct dispute from TransUnion as to Plaintiff Patricia Masales' credit reporting which directly impacted Defendant Ocwen's duties under the settlement agreement, however, Ocwen either

failed to investigate or failed to correct.

59.    Ocwen had a responsibility under the settlement agreement to ensure both Plaintiffs' credit reports were consistent with the Universal Data Form.

60.    Based on the allegations above, *supra*, Ocwen has breached its obligations under the settlement agreement as Plaintiff Patricia Masales' credit report is still inaccurate.

61.    As a direct result of Ocwen's actions Plaintiff Patricia Masales' credit score has continued to be negatively impacted which directly resulted in the increased interest rate with the 2015 Jeep Cherokee purchase in May 2018.

62.    Ocwen has breached the settlement agreement and is liable to the Plaintiffs for actual damages of at least of at least $52.95 as well as the amortized difference in the financing of the 2015 Jeep Cherokee at the 10.39% interest rate versus the 7.60% interest the Plaintiffs could have been eligible for had the Defendants properly reported as well as Plaintiffs' attorneys fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs Christopher Masales and Patricia Masales respectfully request that this Court enter an order granting Judgment against Defendants Ocwen Loan Servicing LLC and Trans Union LLC for the following:

A.    For actual damages against the Defendants of at least $52.95 as well as the amortized difference in the financing of the 2015 Jeep Cherokee at the 10.39% interest rate versus the 7.60% interest the Plaintiffs could have been eligible for had the Defendants properly reported for all of the allegations contained in Count One;

B.    Alternatively for actual damages Defendant Ocwen of at least $52.95 as well as the amortized difference in the financing of the 2015 Jeep Cherokee at the 10.39% interest rate

versus the 7.60% interest the Plaintiffs could have been eligible for had the Defendants properly reported for the allegations contained in Count Two;

C.      For Statutory Damages against Defendant Ocwen pursuant to 15 U.S.C. § 1681n(a)(1) for the allegations contained in Count One;

D.      For Statutory Damages against Defendant TransUnion pursuant to 15 U.S.C. § 1681n(a)(1) for the allegations contained in Count One;

E.      For an award of punitive damages against Defendant Ocwen as the Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2), for the allegations contained in Count One;

F.      For an award of punitive damages against Defendant TransUnion as the Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2), for the allegations contained in Count One;

G.      For an award of Plaintiffs' reasonable costs of litigation and attorney's fees pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant Ocwen for each incident of negligent noncompliance of the FCRA for the allegations contained in Count One;

H.      For an award of Plaintiffs' reasonable costs of litigation and attorney's fees pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant TransUnion for each incident of negligent noncompliance of the FCRA for the allegations contained in Count One; and

I.      For all other relief this Court may deem just and proper.

Respectfully submitted,

*/s/ Marc E. Dann, Esq.*
Marc E. Dann (0039425)
Brian D. Flick (0081605)
DannLaw
P.O. Box 6031040
Cleveland, OH  44103
Phone: (216)373-0539
Facsimile: (216)373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Christopher and Patricia Masales*

## JURY DEMAND

Plaintiffs Christopher Masales and Patricia Masales hereby respectfully demand a trial by jury on all such claims that may be so tried.

*/s/ Marc E. Dann, Esq.*
Marc E. Dann (0039425)
Brian D. Flick (0081605)
DannLaw

14